# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KEVIN BROWN, et al.,

        Plaintiffs,

vs.

SAM'S WEST INC., et al.,

        Defendants.

Case No. 2:15-cv-01964-LDG-CWH

**ORDER**

This matter is before the court on Plaintiffs Kevin Brown and Jennifer Brown's Motion for Sanctions due to Spoliation of Evidence (ECF No. 50), filed on July 17, 2017. The court also considered Defendant Sam's West's response (ECF No. 56), filed on July 31, 2017, the Browns' reply (ECF No. 57), filed on August 3, 2017, and Sam's West's surreply (ECF No. 74), filed on October 19, 2017.[1] The court held an evidentiary hearing on the motion on October 23, 2017. (Order (ECF No. 72); Mins. of Proceedings (ECF No. 77).)

## BACKGROUND

This matter involves a slip-and-fall incident that occurred on May 15, 2015, at a Sam's Club store owned by Sam's West. The incident occurred in the aisle between the cooler and the freezers towards the back of the store. There is no dispute that Kevin Brown slipped on a piece of frozen banana. Nor is there a dispute that no surveillance video of the actual slip and fall existed. The Browns seek sanctions for Sam's West's spoliation of video surveillance from areas of the store nearby the aisle where the slip and fall occurred, and also for Sam's West's failure to preserve the original conditions of the floor, which was resurfaced as part of a store remodel about

---

[1] The court grants Sam's West's motion to file a surreply (ECF No. 73) and denies the Browns' motion to strike (ECF No. 76) the surreply.

seven months after the incident.  The Browns argue that Sam's West should have collected video of the general area of the incident, which would show whether Sam's West's employees conducted inspections as required by its policies.  Additionally, Sam's West had the floor re-surfaced after the incident, and before giving the Browns the opportunity to inspect it, thereby preventing their expert from conducting an inspection of the flooring where the incident occurred.

The Browns argue they have been prejudiced in conducting the necessary discovery to support their claims based on Sam's West's failure to preserve evidence.  As a remedy, the Browns argue Sam's West's answer should be stricken, or in the alternative, the court should give an adverse instruction that had the surveillance video and the condition of the floor been preserved, such evidence would be helpful to Browns' case, or harmful to Sam's West's case.  Sam's West responds that it had no duty to preserve video surveillance of areas nearby the slip-and-fall incident, or to provide advance notice that the floors were going to be resurfaced as part of a remodel project.

## **DISCUSSION**

An owner or occupier of premises is liable for an injury to its invitee that was caused by an unreasonably dangerous condition on its premises, if the owner had actual or constructive notice of its presence.  *Sprague v. Lucky Stores, Inc*., 849 P.2d 320, 322-23 (Nev. 1993); *Asmussen v. New Golden Hotel Co.*, 392 P.2d 49, 50 (Nev. 1964).  "Where a foreign substance on a floor causes a patron to slip and fall, and the business owner or one of its agents caused the substance to be on the floor, liability will lie, as a foreign substance on the floor is usually not consistent with the standard of ordinary care."  *Sprague*, 849 P.2d at 322.  "Where the foreign substance is the result of actions of persons other than the business or its employees, liability will lie only if the business had actual or constructive notice of the condition and failed to remedy it."  *Id*.  Constructive notice exists if the foreign substance was present for such a length of time that the business owner, in the exercise of reasonable diligence, should have discovered and removed it.  *Zumbusch v. Wal-Mart Stores, Inc*., 940 F. Supp. 2d 1308, 1314 (D. Or. 2013) (citing *Van Den Bron v. Fred Meyer, Inc*., 738 P.2d 1011, 1012 (Or. App. 1987)); *Adams v. Valley Hope Ass'n*, 2012 WL 12903146, *2 (D. Ariz. June 28, 2012) (citing *Walker v. Montgomery Ward & Co.,* 511 P.2d 699, 702 (Ariz. App. 1973)).  The

injured person's ability to prove that the business owner had actual or constructive notice may well depend on evidence that is substantially, if not exclusively, in the control of the business owner and its agents.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (9th Cir. 1999). There are two sources of authority under which the court can sanction a party for spoliation of evidence—its inherent authority or Federal Rule of Civil Procedure 37. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Regardless of whether it is under Rule 37 or its inherent authority, a federal court applies federal law when addressing issues of spoliation of evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (applying federal law when addressing spoliation in diversity litigation). Here, the Browns implicitly request that the court exercise its inherent authority to enter an order to strike the answer or for an adverse inference jury instruction.

The court has "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Id.* Such broad power includes permitting an adverse inference from the spoliation of relevant evidence against the spoliating party. *Id.* The adverse inference sanction is based on evidentiary and policy rationales that seek to deter a party who has notice of an item's relevance to litigation from destroying it. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). Therefore, the duty to preserve begins when a party reasonably should have known that the evidence is relevant to anticipated litigation. *See In re Napster*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). A finding of bad faith is not a prerequisite for an adverse inference. *Glover*, 6 F.3d at 1329. A spoliation remedy, however, requires some degree of culpability. *In re Napster*, 462 F. Supp. 2d at 1067. The court need only find that the nonmoving party acted with "conscious disregard" of its obligations. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 988 (N.D. Cal. 2012).

Although the Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of evidence, it has not articulated a precise standard for determining when spoliation sanctions are appropriate. *Id.* at 989. "Trial courts have widely adopted the Second Circuit's

three-part test, which provides that a party seeking an adverse inference instruction based on the destruction of evidence must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* at 989-90 (quotations omitted); *see also Leon*, 464 F.3d at 959 (stating that "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed." (quotation omitted)).

### A. NOTICE

Sam's West does not dispute it was on notice of the slip and fall. It took witness statements, prepared an incident report, received a notice of injury from Brown's attorney within a few days of the incident, and forwarded the correspondence from Brown's attorney to its claims handler. (Mot. (ECF No. 50), Exs. 1, 7-9, 10; Resp. (ECF No. 57), Exs. 1-2.) Therefore, Sam's West had sufficient notice on the date of the incident that litigation was reasonably foreseeable, thereby triggering the duty to preserve relevant evidence.

### B. RELEVANCE

#### 1. Video Surveillance

The parties do not dispute that there is no video of the actual slip-and-fall incident. But video recordings did exist of the general area where the incident occurred, including adjacent aisles. Sam's West did not preserve any of those video recordings. The issue is whether Sam's West had a legal duty to preserve video evidence of general activity in the area, and adjacent aisles. Sam's West argues that it had no such legal duty.

In slip-and-fall cases such as this one, actual or constructive notice of the dangerous condition is relevant to the question of a property owner's liability. Sam's Club's Rule 30(b)(6) witness testified that Sam's West's employees are required to perform safety sweeps of their respective departments or areas as often as possible whenever they are walking the sales floor to look for and correct potential hazards, and they are encouraged to conduct safety sweeps to and from their designated work area, to and from breaks and lunches, and anytime they are on the sales

4

floor. (Mot. (ECF No. 50), Ex. 2 at 49:10-20, 54:03-05.) Additionally, Sam's West's maintenance associates are tasked with the responsibility of conducting safety sweeps throughout the day—they are there to prevent hazards and clean up after members by responding to calls, taking care of the trash, sweeping, mopping, and whatever else necessary. (*Id.* at 50:06-17.) The Browns argue that evidence of employee activity in the aisle where the incident occurred, or adjacent aisles, would demonstrate whether Sam's West conducted regular inspections of the aisles to ensure they were safe. They further argue that Sam's West's investigatory procedures after a customer incident require that video evidence be retained. Of note, the Step 3 of the process requires the management to:

> Obtain Video. It is essential to pull any CCTV video following the incident/accident, even if the incident/accident occurs in the general area or next aisle from where the camera is located. Include additional video from other cameras if video is present and is relevant to the investigation. Obtain video at least one (1) hour prior to and one (1) hour after the incident. . . .

(Pl.'s Mot. (ECF No. 50), Ex. 3.)

This procedure for obtaining video demonstrates that Sam's West recognizes the relevance of activity in the general area of an incident, both before and after the incident. A reasonable trier of fact could find that video of the general area of the incident, both before and after the incident, would support the claims or defenses in this case. Specifically, video of activity in the surrounding areas is relevant to the Browns' claim that Sam's West had actual or constructive notice of the dangerous condition, as well as to Sam's West's defense that it had no constructive notice of the hazard. As the Browns note in their reply, Sam's West argues in its motion for summary judgment that it had no notice of the dangerous condition. (Def.'s Mot. Summ. J. (ECF No. 52), at 5-6.)

Before a court will sanction a party for spoliation of relevant evidence, however, the moving party must demonstrate that relevant evidence existed. *See, e.g., Epstein v. Toys–R–Us Delaware, Inc*., 277 F. Supp. 2d 1266, 1276–77 (S.D. Fla. 2003) (holding that to prevail on a motion for sanctions for the destruction of a videotape, the moving party must establish facts indicating that the video existed). At the evidentiary hearing, Sam's West's asset protection manager, Rachel Coyle, whose duties included dealing with video surveillance and who reviewed the video footage from the day of the incident, confirmed that Sam's West possessed video

evidence of the surrounding area of the incident. Although she did not specifically recall reviewing the video surveillance of the day in question, the asset protection manager testified that she had memorialized her review of the surveillance video in an email related to her investigation stating there was no footage showing "anything from the incident" or the aisle where the incident occurred, so she did not save or record any video surveillance. She stated that "[t]here was no camera shot in the club that [she] could find that showed [her] anything that had anything to do with the incident . . . ."

Coyle testified that although there was not a camera trained on the aisle between the cooler and the freezers where the incident occurred, there were other cameras that existed at the time of the incident, which was before the store was remodeled, including the "back grocery aisle" camera, the "paper doors" camera, and a "PTZ" camera.[2] Coyle stated that the "back grocery aisle" camera was approximately 100 feet from the incident's location. She testified that from the "back grocery aisle" camera's vantage point, one possibly could see store associates walking into the freezer/cooler aisle where the incident occurred. Coyle not recall whether she checked for footage from the "paper doors" camera, which was about forty feet from the end of the freezer/cooler aisle, but she testified that from its vantage point, she would have been able to see whether there were people walking down the aisle on the opposite side of the freezer/cooler area. Coyle also testified that the PTZ camera could have captured video of the area surrounding the incident, but that camera was facing toward the liquor aisle at the time of the incident.

Based on the distance of the "back grocery aisle" and "paper doors" cameras from the freezer/cooler aisle, Coyle stated she would not have been able to see something small, like a piece of banana on the floor, but that from the "back grocery aisle" camera she would have been able to see people turning into the freezer/cooler aisle or a store associate pushing a broom into the freezer/cooler aisle. Coyle further testified that from the "paper doors" camera, she would have been able to see a store associate pushing a broom in the area near the cooler. Coyle could not recall whether the video footage she reviewed showed any store associates walking down the

---

[2] PTZ signifies the camera's ability to pan, tilt, and zoom.

6

freezer/cooler aisle.

Although she is the asset protection manager responsible for collecting video surveillance, Coyle stated that she was not aware of the store's policy regarding collecting video surveillance of the incident and the general area of the incident when she conducted her investigation. She saw the policy for the first time during her deposition in this case. However, she testified that she would have understood the general incident area to include something "valuable" to the incident, such as the element that caused the accident, the person that was involved in the accident, or anything that would help her understand the incident. Coyle testified that when the store was remodeled in 2016, a new DVR was installed, and any previous images would have been deleted.

Based on Coyle's testimony, the court finds that video surveillance footage of the general area of the incident existed, but it was not saved at the time of her investigation. Further, given that new recording equipment was installed during the 2016 remodel project, any video footage of the general area no longer exists. Although Coyle testified that she did not save the surveillance video because it did not show anything related to the incident, a reasonable fact finder could conclude that even video footage showing "nothing" would support the claims or defenses in this case. For instance, video footage showing "nothing" directly relates to the issue of whether Sam's West had constructive knowledge of the piece of banana. Thus, relevant video surveillance existed and was destroyed.

### 2. Floor Condition

Brown's argument that the resurfacing of the concrete floor constituted the spoliation of relevant evidence of the condition of the floor is not persuasive. Sam's West re-surfaced the concrete flooring by conducting a "floor grind" approximately seven months after the incident. However, there is no dispute that Brown slipped on a piece of frozen banana, not on an otherwise slippery floor. Brown's expert opined that the flooring contaminated with a banana would have a slip resistance lower than smooth ice, a clearly hazardous condition. Accordingly, the slip resistance, and the Brown's inability to test the original flooring before it was resurfaced, is not relevant. The court therefore declines to impose sanctions with respect to Sam's West's failure to preserve the condition of the floor.

C. **CULPABILITY**

Given that relevant video evidence of adjacent aisles existed, the Browns must prove that Sam's West had a culpable state of mind in failing to preserve or in destroying the video surveillance. *See Apple*, 888 F. Supp. 2d at 998; *In re Napster*, 462 F. Supp. 2d at 1078. Here, it appears that Sam's West consciously disregarded its obligation to preserve the relevant video. It was aware of the incident and had a store policy requiring that the video be preserved. Its only explanation for why it failed to preserve the video is Coyle's testimony that she did not see any camera shots that had anything to do for the incident. This failure is negligent or reckless action that warrants an adverse inference jury instruction. As a result, the Browns have carried their burden of demonstrating that Sam's West failed to preserve video surveillance with a culpable state of mind.

A defendant who violates its duty to preserve evidence relevant to anticipated litigation should suffer the appropriate sanction. The court therefore will exercise its inherent authority to order an adverse inference instruction as a sanction for Sam's West's failure to preserve video of the areas surrounding the incident. The jury should be instructed that it may infer that the destroyed videos of the surrounding area would not have shown employees conducting safety sweeps before the incident. The exact phrasing of the jury instruction will be determined by the United States district judge assigned to this case at the time the parties settle the jury instructions.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs Kevin and Jennifer Brown's Motion for Spoliation of Evidence (ECF No. 50) is GRANTED in part and DENIED in part. The jury will receive an adverse instruction with respect to the failure to preserve video surveillance as stated in this order.

IT IS FURTHER ORDERED that Defendant Sam's West's Motion for Leave to File a Surreply (ECF No. 73) is GRANTED.

///
///
///

IT IS FURTHER ORDERED that Plaintiffs Kevin and Jennifer Brown's Motion to Strike Defendant Sam's West's Surreply (ECF No. 76) is DENIED.

DATED: January 26, 2018

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**